IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 15, 2015

**FORREST DAVID AGOSTINHO v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Sumner County**
**No. 568-2013     Dee David Gay, Judge**

**No. M2014-01928-CCA-R3-PC – Filed September 16, 2015**

The petitioner, Forrest David Agostinho, appeals the denial of his petition for post-conviction relief, which challenged his 2012 convictions of 14 counts of aggravated sexual battery, five counts of Class B felony sexual exploitation of a minor, and one count of Class D felony sexual exploitation of a minor. In this appeal, the petitioner asserts that the post-conviction court denied him a full and fair hearing on his post-conviction petition and that he was denied the effective assistance of counsel at trial. Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Michael Gene Anderson and Matthew Grosland, Assistant District Public Defenders, for the appellant, Forrest David Agostinho.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Tara Wyllie and Eric Mauldin, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The Davidson County Grand Jury charged the petitioner in case number 508-2011 with five counts of Class B felony sexual exploitation of a minor and one count of Class D felony sexual exploitation of a minor[1] and in case number 474-2011 with 12 counts of aggravated sexual battery, seven counts of rape of a child, four counts of rape,

---

[1] "A violation of [Code section 39-17-1003] is a Class D felony . . . . If the number of individual images, materials, or combination of images and materials, exceeds one hundred (100), the offense shall be a Class B felony." T.C.A. § 39-17-1003(d).

two counts of sexual battery, and three counts of sexual battery by an authority figure. A Davidson County Criminal Court petit jury convicted the defendant as charged in case number 508-2011.

Following his convictions in case number 508-2011, the petitioner entered into a plea agreement with the State that provided an agreed sentence for the jury convictions in case number 508-2011 and disposed of the charges in case number 474-2011. That agreement provided that in case number 508-2011 the defendant would receive sentences of 11 years' incarceration for each conviction of Class B felony sexual exploitation of a minor, to be served at 100 percent by operation of law, *see* T.C.A. § 40-35-501(i)(1),(2)(M), and a sentence of four years' incarceration for the conviction of Class D felony sexual exploitation of a minor and that all of the sentences would be served concurrently, for a total effective sentence in case number 508-2011 of 11 years at 100 percent. The agreement also provided that in exchange for the petitioner's plea of guilty to 14 counts of aggravated sexual battery, each with a sentence of 12 years' incarceration to be served at 100 percent by operation of law, *see id.* § 40-35-501(i)(1),(2)(H), the State would dismiss the remaining charges against the petitioner. The agreement provided for partially consecutive service of the aggravated sexual battery convictions in case number 474-2011, for a total effective sentence in that case of 24 years at 100 percent. Finally, the agreement provided that the 11-year effective sentence imposed in case number 508-2011 be served consecutively to the 24-year sentence imposed in case number 474-2011. The total effective sentence imposed by the trial court was, therefore, 35 years at 100 percent.

Because the petitioner did not exhibit to the post-conviction hearing the transcript of his July 2012 trial in case number 508-2011, the facts of that case are unclear. The guilty plea submission hearing transcript provides that 12 of the petitioner's convictions of aggravated sexual battery

> involve sexual contact with a minor male who was a family friend of the [petitioner's]. It involved sexual contact . . . the [petitioner's] touching the victim's penis. During that time period he was between the ages of 10 and 13 years old, prior to turning 13, obviously as this is the aggravated sexual battery. That ran from 2005 up through . . . February 28, 2008 . . . . Those encounters occurred at the [petitioner's] home in Sumner County, and the young man was under the age of 13 years old.
>
> . . . .

> Count 25 occurred at the [petitioner's] home in a different location off of Station Camp Creek Road in Sumner County and involved contact with a six-year-old female and contact with her vaginal area. . . . [C]ount 27 involves contact with a . . . [boy who] was [10] years old at the time, at the [petitioner's] home, with his penis.

The trial court accepted the State's stipulation of facts and entered judgments of conviction on September 28, 2012, that reflected the plea agreement of the parties.

On July 8, 2013, the petitioner filed a timely petition for post-conviction relief alleging that his guilty pleas were not knowingly and voluntarily entered, that his convictions were based upon the use of a coerced confession, that the State failed to timely disclose favorable evidence, that newly discovered evidence entitled him to post-conviction relief, and that he was denied the effective assistance of counsel.[2] Following the appointment of post-conviction counsel, the petitioner filed an amended petition for post-conviction relief, narrowing his claim to one that "absent trial counsel's ineffective assistance of counsel in these matters, the [p]etitioner would have accepted the State's offer (an effective sentence of fifteen (15) to twenty-five (25) years at 100% to serve with a sentence hearing to determine the [p]etitioner's sentences within that range)." The petitioner asked that the post-conviction court order the State to reinstate the previously rejected plea offer.

At the August 15, 2014 evidentiary hearing, trial counsel testified that, just prior to the petitioner's trial in case number 508-2011, the State offered the petitioner an agreed sentence of 15 to 25 years' incarceration to be served at 100 percent in exchange for his plea of guilty to charges in both case numbers 508-2011 and 474-2011. Counsel testified that, prior to that trial, he reviewed the discovery materials provided by the State, including the images seized from the petitioner's computer and the "chat logs" obtained

---

[2] Code section 40-30-104 provides:

> The petition for post-conviction relief shall be limited to the assertion of claims for relief from the judgment or judgments entered in a single trial or proceeding. If the petitioner desires to obtain relief from judgments entered in separate trials or proceedings, the petitioner must file separate petitions.

Although the petitioner had a jury trial in case number 508-2011, the two cases were consolidated as part of the plea agreement, and the judgments in both cases were entered following the guilty plea submission hearing on September 28, 2012. Because all the judgments were entered following that single proceeding, the petitioner was not required to file separate petitions in this case.

during the forensic examination of the petitioner's computer. He said that he discussed those images and some of the "chat logs" with the petitioner but that the "chats" he observed "were not particularly concerning to" him. Counsel identified one particular "chat log" and agreed that "four or five or six lines [in the log were] probably pretty damning." Counsel noted that the "chat logs" he received in the discovery materials were "several inches thick." Counsel said that he could not recall whether he discussed with the petitioner "chat logs" that bore the username "dreamweaver." Counsel said that when he received the "chat logs," he "kind of fanned through" the document, which was "stacked several inches thick," and concluded, "'Well, this is just gibberish, looks like something they tried to pull off the computer, but weren't successful in getting anything of real import.'" He said that he "was ineffective for not reading that document page by page and not pulling out what was some very damaging evidence" or asking the prosecutor about the importance of the document. Despite his failure to closely examine the document, counsel said that he saw enough information to lead him to question the petitioner's claims that other people had been in his house and had participated in the "chats" on his computer. Counsel testified that, at trial, "it became exceedingly difficult" for the theory of the defense to "hold up" in the face of the "chat logs." He recalled "turning to [the petitioner] and saying, you know, 'We're screwed,' or something to that effect."

Counsel testified that although he was not very knowledgeable about technical matters regarding digital images and the like, he did not ask the court for funds to hire an expert because he "did not feel that was necessary." He said that he ultimately advised the petitioner that he believed it was a viable defense to claim that others with access to the petitioner's computer had downloaded the objectionable images. Counsel testified that, had he "realized the nature and specificity and timing of some of those chats," he would have told the petitioner that the case was "not very defensible." He clarified, however, that his "advice would have been the same, which was take the offer on the table because of" the looming specter of case number 474-2011. He acknowledged that his statements to the petitioner regarding the strength of the State's case were incorrect but maintained that his "advice to [the petitioner] to take the offer on the table [was] correct advice."

Counsel recalled that the prosecutor informed him prior to trial that the State intended to use the contents of the petitioner's recorded telephone calls made from the jail, and although he had no specific recollection of having done so, counsel said that he could not "imagine [he] would not have listened to the phone calls." He said that his "memory was that, whatever they were," the telephone calls were "not fatal."

Trial counsel testified that he was retained to represent the petitioner in case number 474-2011 but appointed by the court in case number 508-2011. Counsel

-4-

explained that the charges in case number 508-2011 arose during the forensic examination of the petitioner's computer, which was seized by authorities during the investigation in case number 474-2011. The State chose to proceed to trial on case number 508-2011 first. Counsel acknowledged that the evidence available to the State in case number 474-2011 was strong, recalling that the petitioner participated in a controlled telephone call with the mother of the victims and that the contents of that recording were "damaging in both content and tone." He said that he felt the defense had "no defense to that controlled phone call." The petitioner told counsel that the description of sexual activity with the victims that was contained in the controlled call was merely the petitioner's mistress's "fantasy to talk about those sexual things with children and so he was submitting to her fantasy to do that." Counsel told the petitioner that "even if the jury believed that," they "would be more likely to" convict the petitioner from sheer "repulsion that he would engage in such a fantastical conversation." Counsel testified,

> So when you have children or minors taking the witness stand under oath state that they were sexually abused by this man and that he's on a controlled phone call engaging in, even if it's just fantasy talk and not true admissions, not actual acts, that I felt that there was just going to be no viable way around that.

Additionally, the petitioner had provided a statement to the police that, although short of an "outright admission," was "very damaging" in that the petitioner "apologized numerous times" and "appeared very guilty." He said that he advised the petitioner that he "did not have a viable defense" to the sexual abuse charges in case number 474-2011. Although he could not recall whether he told the petitioner the exact number of years to which he would be exposed upon a conviction for the charges in case number 474-2011, he did recall telling the petitioner, "'If you take the 25 years, you'll be out someday and have some period of time of life left. If you don't and you're convicted, I believe you'll die in prison.'"

Counsel said that the State's first offer to dispose of the two cases included a total effective sentence of 50 years and that he advised the petitioner to reject that offer. He recalled the petitioner's saying, "'Well, I'll take probation and a year to serve.'" Counsel told the petitioner "that was ridiculous" but nevertheless presented the counter offer to the prosecutor. Eventually, the State presented the offer of "15 to 25 years with a sentencing hearing." Counsel testified that he advised the petitioner to accept the offer, explaining, "I said to [the petitioner], 'Given what we're dealing with, you should assume that if we took that offer it would be 25. I do not see a judge, let alone Judge Gay, giving you 15 on a sentencing hearing in this case.'" Despite counsel's advice, the petitioner rejected the offer. Counsel recalled the petitioner's telling him that "he had had a

spiritual awakening or turned his life over to God while he was in jail and that he felt he was being spiritually led or God told him . . . [or] he was being directed by God to go to trial."

Following his convictions in case number 508-2011, the petitioner asked counsel to set up a meeting with the prosecutor, a member of law enforcement, and the petitioner. During that meeting, the prosecutor presented a plea offer that included a total effective sentence of 30 years at 100 percent service on both cases, but the petitioner rejected that offer because he did not want to plead guilty to rape. At that same meeting, the prosecutor eventually made the offer that the petitioner ultimately accepted, which provided for a total effective sentence of 35 years at 100 percent.

Upon questioning by the post-conviction court, trial counsel stated that he had practiced criminal law nearly exclusively since becoming licensed to practice law in 1987. He said that he had tried between 175 and 200 criminal trials. Counsel said that he met with the petitioner "at least ten times" and that the two "had a good working relationship." Counsel told the court that he arranged the meeting with the petitioner and the prosecutor prior to the trial in case number 508-2011 at the petitioner's behest because the petitioner wanted to make a personal appeal "to try to get that 25-year offer again." Counsel clarified that the images that formed the basis of case number 508-2011 "depicted graphic sexual conduct with very young toddler aged" children. He said that he managed to get the State to agree not to show all of the images to the jury.

Tennessee Bureau of Investigation ("TBI") Special Agent Nicholas Christian testified that he examined a computer that belonged to the petitioner and discovered "images of possible minors, nude, engaged in sexual explicit activity" and "GigaTribe chat messages of possible relevance." He was able to tie those images to the petitioner using information gleaned by examining the owner of the usernames and pseudonyms identified in the various "chat logs."

The petitioner testified that counsel "never brought up anything of chats, except . . . he did look at – there was something about chats but it was nothing to worry about." He insisted that, had counsel correctly explained the strength of the State's case, he would have accepted the State's offer of a 15- to 25-year sentence.

During cross-examination, the petitioner insisted that it was not his theory of defense that another person had used his computer to download child pornography, claiming that "[t]hat was [counsel's] defense" and that he "went with what [counsel] recommended." The petitioner admitted that he downloaded the child pornography and that he knew that the defense was "flawed." The petitioner said that even though he knew going into the trial that he was guilty, he would not have gone to trial had counsel

-6-

told him "that the defense wasn't going to work." The petitioner conceded that trial counsel advised him to accept the State's offer and warned him that going to trial "was a gamble." The petitioner acknowledged asking counsel to arrange the post-trial meeting with the prosecutor, saying that he wanted to ask for mercy because "it's biblical. It's justice tempered with mercy." He recalled having told the prosecutor that "it was a dream that [he] thought was from God" that led him to insist on going to trial in case number 508-2011. He explained, "I said that I had a dream that I thought was God, and that was based after what [counsel] had spoken to me about, it being defensible."

Upon unusually rigorous questioning by the post-conviction court, the petitioner said that he had his epiphanic dream "about a week before our settlement hearing." He said that he had "recently discovered" that his dream had not come from God "because it was based on a lie." He reiterated, "[Counsel] told me that [case number 508-2011] was a defensible one. And I said okay. Shortly thereafter, we were having a settlement hearing. I had a dream that we had won the . . . case." In his dream, the jury acquitted him in case number 508-2011, and he "took it that that was a sign and that we should go forward." The petitioner said that had counsel not told him that case number 508-2011 was defensible, "I don't know if I would have had the dream."

The petitioner agreed that the 11-year effective sentence imposed pursuant to the plea agreement in case number 508-2011 was a favorable one. The petitioner did not agree that the 24-year effective sentence imposed in case number 474-2011 was favorable, despite that he faced a potential sentence of more than 100 years. He said that "the truth would come out in the trial" in case number 474-2011 and would show that he "didn't do all the things" that he was charged with doing. He acknowledged that he admitted his guilt of those offenses at the guilty plea submission hearing, but he said that he "was told all [he] could say was 'Yes, sir,'" when the judge asked whether he was "guilty or not guilty." When pressed by the court as to whether he had lied during the plea submission hearing, the petitioner said, "No, sir. I wanted to say more. I wanted to explain." The petitioner said that he lied under oath when he said that he was guilty of the offenses. When the court confronted the petitioner with the transcript of the guilty plea submission hearing, the petitioner acknowledged his answers but insisted that he "was told all [he] could say was 'Yes, sir,' or 'No, sir.'" He agreed with the post-conviction court that that fact did not make his answers "any less of a lie."

The petitioner insisted that he agreed to plead guilty despite his innocence of the charges in case number 474-2011 because the State's offer of 24 years at 100 percent service was preferable to a sentence of "60 years" and the prospect of another trial. The petitioner said that he agreed with counsel that the best strategy in case number 508-2011 was to show that other individuals with access to the petitioner's computer

could have downloaded the illegal images. He acknowledged that the images were graphic and offensive and that he was aware that the proof against him was strong.

At the conclusion of the hearing,[3] the post-coviction court observed that the plea agreement provided for an agreed sentence of 11 years at 100 percent in case number 508-2011 when the petitioner faced a potential sentence of more than 60 years and for an agreed sentence of 24 years at 100 percent in case number 474-2011 when the petitioner faced a potential sentence in excess of 300 years. The court noted that although the petitioner admitted during the evidentiary hearing that he had downloaded child pornography onto his computer, "[h]e testified at trial that he didn't put the pictures on the computer or engage in the chats. He committed perjury."[4] The court stated that its factual finding that the petitioner committed perjury impacted the petitioner's credibility. Noting also the petitioner's evidentiary hearing testimony that "he would have taken the offer and that he had this dream, and this dream, coincidentally, was based on the information that was given to him by" trial counsel, the post-conviction court concluded that the petitioner was "not believable" and placed "no weight on the testimony of" the petitioner. The post-conviction court observed that although trial counsel testified that he thought "he had a defensible case" in case number 508-2011, "attorneys are always very optimistic, and what they might think is defensible might not be so defensible." The court noted that counsel "called four witnesses to substantiate the lie that the defendant proposed. . . . [A]nd they did a good job of showing that other people had access to the computer." The trial court found that although trial counsel "admitted that he was wrong or made a mistake in talking to the [petitioner] as to the strength of the case," counsel's advice that the petitioner accept the State's plea offer prior to trial "was constant and would not have changed." The court placed "great credibility" on counsel's testimony that the petitioner would not have taken the offer regardless of counsel's opinion of the strength of the State's case. The court stated that it did not agree with counsel's "very optimistic belief that [case number 508-2011] was defensible" but concluded that counsel's error "was a mistake that does not amount to a constitutional deficiency."

---

[3] The post-conviction court did not include any findings of fact in its written order denying post-conviction relief and instead incorporated by reference the findings of fact issued from the bench following the evidentiary hearing. *But see* T.C.A. § 40-30-111(b) ("Upon the final disposition of every petition, the court shall enter a final order, and except where proceedings for delayed appeal are allowed, *shall set forth in the order or a written memorandum of the case all grounds presented, and shall state the findings of fact and conclusions of law with regard to each ground*.") (emphasis added).

[4] The post-conviction court made a direct reference to testimony from the trial in case number 508-2011. Post-conviction counsel took exception to the court's characterization of the trial evidence, but neither party offered any portion of that trial record into evidence at the evidentiary hearing. Because there was no direct appeal in that case, this court cannot take judicial notice of a transcript that might have been included in the record of a direct appeal to this court. Under these circumstances, the trial record from case number 508-2011 is not before this court.

-8-

The post-conviction court further concluded that even if counsel's mistaken opinion on the strength of the State's case could be classified as constitutionally deficient performance, the petitioner had failed to establish any prejudice. The court ruled that, despite the petitioner's evidentiary hearing testimony to the contrary, the petitioner "would not have pled guilty in the first case, regardless of the offer here based on his so-called visions." The court denied relief based upon its finding that counsel did not perform deficiently and that, even if counsel's performance was deficient, the petitioner failed to establish any prejudice flowing from that deficiency.

In this appeal, the petitioner contends that the post-conviction court did not afford him a full and fair hearing and that the court erred by denying post-conviction relief.

### I. Full and Fair Hearing

The petitioner first asserts that the post-conviction court deprived him of the right to a full and fair hearing by conducting its own examination of the witnesses in a manner that bolstered the State's position and evinced the court's bias toward the State. The State contends that the petitioner waived any claim related to the post-conviction court's conduct during the hearing by failing to lodge a contemporaneous objection and that this court may not review the issue for plain error because the plain error rule is not applicable to post-conviction proceedings. In the alternative, the State argues that the post-conviction court did not deprive the petitioner of a full and fair hearing.

"[A] 'full and fair hearing . . . occurs if a petitioner is given the opportunity to present proof and argument on the petition for post-conviction relief.'" *State v. West*, 19 S.W.3d 753, 755 (Tenn. 2000) (quoting *House v. State*, 911 S.W.2d 705, 714 (Tenn. 1995)); *see also* T.C.A. § 40-30-106(h) ("A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence."). Due process is satisfied when the post-conviction petitioner is given the opportunity to be heard "at a meaningful time and in a meaningful manner." *Stokes v. State*, 146 S.W.3d 56, 61 (Tenn. 2004); *see also House*, 911 S.W.2d at 711.

Nothing prevents the post-conviction court's asking questions of the witnesses at a post-conviction hearing. To the contrary, the Tennessee Rules of Evidence specifically allow the court to "interrogate witnesses," *see* Tenn. R. Evid. 614(b), so long as the court, in a jury trial, "avoid[s] 'commenting on the evidence' in violation of the Tennessee Constitution, Art. VI, Sec. 9," *see id.*, Advisory Comm'n Comments. "So long as the inquiry is impartial, trial courts may ask questions to either clarify a point or

to supply any omission." *State v. Schiefelbein*, 230 S.W.3d 88, 118 (Tenn. Crim. App. 2007) (citing *Collins v. State*, 416 S.W.2d 766 (Tenn. 1967); *Parker v. State*, 178 S.W. 438 (Tenn. 1915)).

Although the post-conviction court's questioning of the witnesses, and the petitioner in particular, was unusually rigorous, we cannot say that the court's interrogation of the witnesses denied the petitioner a full and fair hearing of his claims for relief. Nor do we believe that the tenor of the court's questions indicated its prejudice against the petitioner. That the court's questions bolstered the State's position does not alter our conclusion. Nothing in the record suggests that the court's questions were designed to bolster the State's position. Instead, the record establishes that the court's questions were designed to clarify the testimony being offered.

The petitioner testified that counsel's statement to him that case number 508-2011 "was defensible" caused him to reject the plea agreement. Upon further questioning by the State, the petitioner acknowledged having told the prosecutor following the trial in case number 508-2011 that he had elected to go to trial because he dreamed that God was leading him to do so. The court's interrogation of the petitioner clarified the petitioner's position that he believed that counsel's statement that case number 508-2011 "was defensible" occasioned his epiphanic dream and that, had counsel not made the statement, he might not have had the dream that led him to go to trial.

After the petitioner testified that he was not guilty of any of the offenses charged in case number 474-2011, the post-conviction court questioned the petitioner using the admissions that the petitioner made at the guilty plea submission hearing. Because the determination of witness credibility was paramount in this case, we cannot say that the post-conviction court abused its discretion by questioning the petitioner about his veracity at the earlier proceeding.

In this case, the petitioner availed himself of the opportunity to subpoena and present witnesses on his behalf and to submit evidence in support of his claims to an impartial court. Nothing more is constitutionally required.

## II. *Post-Conviction Claims*

The petitioner avers that his counsel performed deficiently by failing to adequately examine the discovery materials and that this failure caused him to underestimate the strength of the State's case, which, in turn, caused counsel to erroneously suggest to the petitioner that case number 508-2011 "was defensible." He argues that it was this erroneous advice that caused him to reject the State's offer of a sentence of "15 to 25 years." He insists that the remedy for counsel's deficiency is

specific performance of the pretrial plea agreement, *i.e.*, he asks this court to force the State to reinstate the earlier offer.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

A claim of ineffective assistance of counsel, specifically, is a mixed question of law and fact. *See Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015); *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and

-11-

used reasonable professional judgment to make all significant decisions," *Kendrick*, 454 S.W.3d at 458 (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

At the evidentiary hearing, trial counsel acknowledged that he overlooked certain evidence linking the petitioner to the pornographic images on his computer that was in the discovery materials provided by the State in case number 508-2011. He said that this evidence proved to be particularly detrimental to the petitioner's defense that other people with access to the petitioner's computer could have downloaded the images to the petitioner's computer without his knowledge. Counsel admitted that he told the petitioner that case number 508-2011 "was defensible," but he maintained that he "begged" the petitioner to accept the State's offer of a total effective sentence of 15 to 25 years because the offer included the disposition of case number 474-2011, which counsel told the petitioner was indefensible. The petitioner admitted that he rejected the State's offer and insisted on going to trial in case number 508-2011 because he had a dream prior to the settlement conference that he went to trial and was acquitted. He said that he believed the dream to be God's telling him to go to trial even though he was guilty of the charged offenses. The petitioner claimed, however, that he believed that it was counsel's statement that occasioned his dream. Essentially, he said that without the statement, he would not have had the dream and that without the dream he would not have rejected the State's offer.

In our view, the petitioner failed to establish that counsel performed deficiently. Certainly, by benefit of hindsight, it appears that counsel misjudged the strength of the State's evidence in case number 508-2011 and that his misjudgment was, at least in part, occasioned by his failure to thoroughly examine the discovery materials in that case. The record is clear, however, that counsel implored the petitioner to accept the plea agreement because it disposed of all the charges against the petitioner. Counsel's advice that the petitioner accept the plea offer was sound, and the petitioner cannot now be heard to complain because he chose not to follow it. Nothing in the record suggests that counsel ever guaranteed the petitioner that he would prevail at trial, instead the record shows that counsel stated only that, in contrast to the charges in case number 474-2011, a viable defense existed to the offenses charged in case number 508-2011. That counsel's theory of defense was not successful does not mean it was not a reasonable strategy under the circumstances.

Finally, we note that, even if the petitioner had established by clear and convincing evidence his claim of ineffective assistance of counsel, the remedy would not be, as the petitioner suggests, specific performance of the State's pretrial plea offer. Trial counsel successfully negotiated that plea offer, communicated the offer to the petitioner, and actively encouraged the petitioner to accept the offer. Importantly, even if counsel misjudged the strength of the State's evidence in case number 508-2011, he accurately informed the petitioner that the State's evidence in case number 474-2011 was overwhelming and that it was in the petitioner's best interest to accept the offer that disposed of all the charges in both cases. Under these circumstances, the petitioner cannot show that specific performance is required. *See Nesbit v. State*, 452 S.W.3d 779, 801 (Tenn. 2014), *cert. denied*, ___ U.S. ___, 135 S. Ct. 1853 (2015).

Because the post-conviction court properly denied the petition for post-conviction relief following a full and fair hearing, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE